Welcome aboard on a ride on the New York City Line!  Thank you for watching and don't forget to Like and Subscribe!  Bye Bye! Our final case for argument, 2019-1511 Baggage Airline Guest Services v. Roadie, Inc. Mr. Stein, please proceed. Thank you, Your Honor. My name is Stephen Stein, and to my right is my associate, Cole Carlson, and behind him is my other associate, William Stein. We're with the law firm in Florida of Gray Robinson, and we're here on behalf of the appellant. May it please the Court. The District Court's decision granting the 12C motion was flawed because the decision was predicated upon labeling the claim limitation, Selection to Hold Delivery, as well as nine other limitations of Representative Claim 7 as being individually abstract without considering whether their interrelated functionalities as a whole was directed to an abstract idea. We contend that the decision was flawed because Alice cautioned against reducing each claim element to individual abstract ideas because that would, in effect, render just about every patent ineligible. And moreover, in our case, the limitation of Selection to Hold Delivery was the very limitation that was added during the prosecution to render the claims substantively allowable over three pieces of prior art that were being applied, and also to render the claims patent eligible under 101, which I might add at this point that the 101 rejection during prosecution started before Alice and the last one ended after Alice, post-Alice, and the addition of Selection to Hold Delivery was found to satisfy substantively and from an abstract idea standpoint to render the patent allowable and therefore it issued. The Selection to Hold Delivery alone by itself, as well as in combination with the nine other limitations, do cite particular ways of communicating information to coordinate and monitor baggage delivery. The trial court simply jumped to the conclusion that all the limitations in Claim 7 could be done using a telephone and then concluded that the claim was directed to an abstract idea under the first prong of the Alice test. However, the trial court's conclusion was not based upon any evidence or expert witness testimony. As should and would have occurred in the context of a motion for summary judgment or trial following appropriate fact discovery and expert witness reports and discovery. Indeed, I'm sure we all have had nightmare stories of dealing with trying to reclaim lost luggage. Hollywood has produced comedies, many movies about lost luggage. The one that comes to mind is Meet the Parents with Ben Stiller. Simply telephoning someone at the airline is not always a solution. Else there would not be any nightmare stories to deal with. However, none of that, whether it's good or bad, demonstrating how quick and easy or how difficult it is to recover lost luggage by a telephone call to the airline, is not in the record. The only evidence that's in the record is what is intrinsic, which is the patent itself with a background of the invention description alluding to a telephone. But nothing in the patent specification, nor in its file history, which is also part of the intrinsic record, admits that these additional limitations were well understood, routine, and conventional. All they have, all the appellee has, is the background of the invention. And there is nothing in the background of the invention that the judge, the trial court, could have understood to reach the conclusion of being well understood, routine, and conventional. Selection to hold delivery is an example of a claim element that cannot be accomplished by using an old-fashioned telephone by simply calling someone at the airline. Selection to hold delivery may arguably be subject to different interpretations, hence the need for a markman, which we did not have. Interpreted very narrowly, maybe the claims are valid under Alice, but not infringed. Conversely, interpreting them too broadly, maybe it is directed to an abstract idea and is invalid under Alice. But in any event, the record is devoid of any evidence relating to either scenario. Mr. Stein, how do you say a broad interpretation could possibly result in invalidity or non-patentable subject matter under Alice? Well, I hate to say that, but to be fair, I had to present both arguments. If the interpretation was so broad that it meant nothing more than the preamble of the claim, which is essentially what the district court said, then it would be easy or easier to find it directed to an abstract idea. But as we know from Alice, we are not supposed to examine the claim with such granularity that we look at each claim element and conclude that each claim element is an abstract idea because, as I said before, nothing would be patentable. We have to look at it in context of what was well understood conventional and non-routine. And we have to look at the whole thing. So, in our case, much like the precedent that we have before us, Atrix and the others, we have a very, very detailed claim. The appellee would argue that we basically do nothing but put a period after the preamble.  We interpret it to mean exactly what it says, literally. And our argument from day one has been that the case is going to revolve around what selection to hold delivery means. What is the scope of that term? In the patent, the selection to hold delivery feature is talked about in the drawings and the specification as having a drop-down box, where the passenger that has lost the luggage could click on a drop-down box that could say 30-minute delay or 60-minute delay or whatever. The infringing system being sold by Rody does not have a drop-down box. It does have a selection. And the selection allows the passenger to call the driver through the server, as called for in Claim 1, Claim 17, and reschedule. Before filing suit, we did a trap sale, basically, where we had a package delivered from my house to my house. And midstream, I changed the delivery. Well, in my mind, that did both. It changed many of the parameters that related to the delivery parameters. And then after the case, after we filed the case, Rody complained that we didn't specifically change the delivery time. So we did another trap sale, which was actually Mr. Stein flew to Atlanta for no reason, came back and lost his luggage. And had it scheduled to be delivered to the office, and then specifically changed the time of the delivery. Same location, but different time. And they still complain there's no infringement. In fact, that begs the root of the problem here, is that under Alice, the abstract idea, reasoning, the basis for Alice, is that we don't want the patent system to be construed so broadly that it forecloses competition by keeping somebody out of a big field. Well, here, that's not the case. Rody is hotly contesting infringement. And we believe they are infringing for the reasons just explained. But that just goes to show you that there is no preemption. There's no preemption in the baggage delivery business. There happen to be predominantly two competitors, us and them. But there's no preemption. They and anyone can get into the field by simply not having the functionality of selecting the whole delivery. There's no preemption whatsoever. So, if they want to go to trial and rely on their defense that there's no infringement, fine, let's go to trial. Okay. But Judge Andrews short-circuited that because we didn't get into any discovery. We started part of the Markman determination. And we identified words in the claims that we had agreed to, which actually were most of them. I think it was document 66 in the pleadings. And if you look at the agreed-upon terms, they were very specific. Passenger, deliverer, very specific. What was in dispute was the selection to hold delivery. Well, we would have thought about that at the appropriate time when we would have had the Markman hearing before Judge Andrews, but we didn't get that far because we granted this motion. Mr. Stein, you're using your rebuttal time. Do you want to save any? I do. I think I have two minutes left. Correct? Very good. Okay. So, Your Honor. That's the rebuttal time that you're using. I know. Okay. Our position is, quite simply, is that we should not have been cut short. We should have been allowed to at least go through the Markman determination and trial, and fundamentally, there's no evidence in the record except for the intrinsic record as to what was common, understood, routine, and conventional. Thank you. Thank you, Mr. Stein. Mr. Pennington? May it please the Court. Edward Pennington for Appellate Rody. Let me say, first of all, there are a couple things that seem to be confused, and I could go back in reverse order. One is, this case went through discovery. We actually went through quite a bit of discovery in this case. Number two, I'm not sure why we're talking about infringement today, but as long as we're on the topic, we filed a dispositive motion on infringement alleging that they did no pre-filing investigation. We clearly don't infringe both the one-on-one motion. I think the reason for the discussion of infringement was to show that if you're right about your infringement position, then the scope of what is preempted by their patent is at least narrow enough to allow you to compete. Your Honor, if that's the argument, if they're saying that we don't need to be here, if they're going to concede we don't infringe. They're not going to concede it, but I think that was the point. Well, I don't know, Your Honor. I would say that that argument does not eliminate the preemption argument. We don't have to be preempted, number one. We have other reasons for this case to end right here. The first thing I want to bring up, Your Honor, is that we're here on appeal of a judgment on the pleadings, 12C. And all the court did there was construe or to go through the two-step process under Alice. That's what we're here to look at. And in that process, the court determined that the claim, Claim 7, was directed to an abstract idea. So on review, the first thing that this court is asked to do is consider whether that was error. Can you remind me what discussion in the district court, I use the discussion loosely so that you can say everything that might fall under that term, was there about claim construction? Were there specific arguments that this claim term means X, and you said no, it means Y, and so on? Yeah, and that goes to one fundamental thing. The opposition said that there was no claim construction, but there was. Your Honor, this motion was coming up for argument.  We had briefed Markman. We had done all but argue Markman. And so right before the judge issued his opinion on 101, he canceled our argument on the Markman. So it was fully briefed, ready to go to argument. He canceled the oral argument, and about a week or two later, he issued the 101. In the 101, he specifically construed what it meant to the term selection to hold means. And he held, he construed it. It's in his opinion. He said it means, well, first of all, he said the parties disagree on what it means. So he gave them the benefit of the doubt. And he construed it to mean sending a communication to the deliverer via the server to change delivery time. That is his construction. That is claim construction. So the statement that there was no construction is absolutely wrong. Did Judge Andrews rely on any construction other than ones either adopted or assumed that the plaintiff proposed? I would say that... Did he reject any claim construction? No. Okay. Now, all he did in his opinion was to say that the parties disagree on this one issue about what this means. Probably because the other side was focused on that particular limitation. And what the judge said was that that does nothing to get over step one or step two. That all you're doing is adding another abstract idea to an abstract idea. All you're doing is saying, don't pick up the luggage yet. I'm not ready. And what the judge in the district court said was that this has been done for years. And as far as what the intrinsic evidence is, if you go to the background section, which is appendix 28, there's not much there, but it describes everything they're doing. And that's what's wrong with this patent. There's just not anything there. In the background section of this patent, it describes the whole process of your baggage going somewhere where you're not. And calls being made to say, where's my bags? Come pick it up. Call a taxi to deliver it. All of this involves, in the prior art, it involves phones. If you look at what they say in the patent, is there hardware? They have a server, and they have two phones. They have two devices that are held by the passenger is one, and the deliverer is the other. And those are, they go into a description in the patent about how that can be anything. It can be a computer. It can be a notepad. It can be any computing device. No special computing device whatsoever. No special software. If you look in the patent, there's nothing about the programming. No language, nothing in the hardware, nothing in the software. Everything that is done in that claim is done in the prior art. And that's not much, but it's not much in the patent claim. If you look at the patent claim itself, what the judge did at the district court level, is he said, look, all it's doing is telling you to do things that you could have done by the phone. And all this really is, is an app. That sort of mimics a phone. Instead of you talking to me, you might be sending me a text, or you might have an interface that says, okay, it's coming, or whatever. There's just nothing there. There's no special computers. There's no special hardware connection, networking, anything. There's nothing here that you could say is different from what was done in the prior art. As far as the judge's determination that this is an abstract idea, he specifically referred to his claim construction on the selection to hold and what it meant. He construed it, and he said that didn't do it. That did not do enough. When you just add the abstract idea of telling you, telling the server to don't pick it up yet, because I'm not there. If you look in the background section, it even says in the prior art that the deliverer would call the passenger. And why would he call the passenger? To see if he was there. It even says he called to see if he was there. Why is he doing that? To see if he should deliver it or not. It's all just another way of saying what's already been out there. And if anything, Your Honor, the court probably looked at this and said, yeah, we've all done this. We've all been there. We've all traveled and had bags not follow us. We've all made calls. We've all had to deal with the airlines. And it's the same kind of thing that's in this one claim. And this is only one claim that we're dealing with. It's representative. They did not argue at the district court in their motion that there were dependent claims that did anything different or that the other independent claims did anything differently. So there's no question that this is the representative claim. Seven is the only thing we're looking at. And when you look at that claim, the claim language there is 100% completely functional. All it does is it talks about setting things up for delivery. Okay. It doesn't talk about how it does it other than indirectly it says there's a computing device for each person. Every one of these, Your Honor, everybody has one. And we've had them for a long time. So there's nothing unique here that's in the claims. In terms of what the judge also did, in addition to finding that this was an abstract idea, he also found that there was nothing else in step two that pulled this out of the realm of just an abstract idea. There was no inventive concept that was added to this. He said, and this is where the judge made what you could call factual findings. There's nothing different. There's nothing unique. This is conventional. Just go back to the background section and see that this is being done for a long time. You're not adding anything different. And therefore, I'm finding that there's nothing here that pushes this into the inventive concept. That is a factual finding that's reviewed for, I'm sorry, clear error, Your Honor, as opposed to the deference that you would give for the ultimate finding of one-on-one patent eligibility. The other things that I could bring up, Your Honor, the nine things that they were talking about, I think they're... Yeah, I'm not, some of them were not raised at the district court level. They were raised here for the first time. This expert discovery, Your Honor, I just, again, the issue is one of law. We have actually had fact discovery already. This case has been going on a lot longer than anybody wanted it to. It started in Florida. We moved it to Delaware. The motion has been pending for a long time. We got a ruling. There was no ruling on the infringement, the non-infringement motion. But we believe that that would have gone our way as well. I can't find anything, Your Honor, that would support any notion that this is anything but an abstract idea. The case law, there's plenty of case law that says that if all you're doing is something that you normally did in the past, but you're now doing it with a computer, that's not going to push you out of the realm of an abstract idea. And the cases that we cite in there support that notion. I don't know if you have any other specific questions, but, you know, the idea that these were very specific claims, the claims don't have anything in it, but Claim 7 doesn't have anything but a server. It says that I'm doing these steps with a server, and then I'm communicating with a computing device held by a traveler or the passenger and the deliverer. It doesn't say how. It's just, it could have been a phone call. It doesn't say by text. It doesn't say how it's programmed. The pull-down menus, those kind of details are not in the claims whatsoever, and we're only dealing with Claim 7. So, with that, I would reserve, actually, unless you have any other questions. Okay, thank you, Mr. Pennington. Mr. Stein has some rebuttal time. Thank you. Minute 30. I believe it was just stated that the judge made some factual findings. I don't know how that could possibly happen in connection with the 12C motion, and certainly counsel is not a person skilled in the art to have represented anything to the trial court. Well, I understood his argument. It was that it was based on express statements in the background section of the patent in the prosecution history, and we have held that courts can consider those statements in assessing whether there's inventive concepts. Absolutely. That's part of the intrinsic evidence, and if you look at their chart that they had submitted in our chart in our corrected reply brief, we address that, beginning on page 14, to explain why there's a lot of something more there than just what's in the background. There's nothing in the background about transceivers and servers and the other physical components that make this possible. Your Honors, we believe that this case is exactly on all fours with Atrix that you're familiar with, and as well as Berkheimer that you're familiar with. This was just done prematurely. We should have gone through a full Markman hearing. Then it might have been a summary judgment motion, but we wouldn't be here in this context. We have a valuable patent that's made a lot of money. The company just sold for tens of millions of dollars. It's a big industry, and we were cut short, and our patent was declared invalid. Okay, Mr. Stein, we're beyond our time, so I think that'll conclude our argument for today. We thank both counsel. The case is taken under submission. Thank you. All rise. The honorable court is adjourned until tomorrow morning. It's an o'clock a.m.